Mr. Roy Romer Colorado State Treasurer State Capitol Denver, Colorado 80203
Dear Mr. Romer:
Your office has requested a legal opinion on certain questions relating to the authority of the state treasurer to contract with The First National Bank of Denver (the "bank") for deposits of state moneys. You have provided a copy of the proposed credit and operating agreement between the treasurer and the bank (the "agreement") and related documents; a note and a security and pledge agreement (collectively with the agreement referred to as the "loan documents"). As a condition precedent to its obligations under the agreement, the bank requires a favorable opinion of this office as to certain representations and warranties made by the treasurer in section 3.01 of the agreement. It is that opinion which you have requested.
QUESTIONS PRESENTED AND CONCLUSIONS
1. With the approvals of the state controller and the attorney general, as evidenced by their signatures on the agreement, does the state treasurer, on behalf of the State of Colorado, have authority to execute, deliver, and perform its obligations under the loan documents?
My conclusion is "yes."
2. Will the execution of the agreement by the state treasurer, controller and attorney general, and the execution, delivery and performance of the loan documents by the state treasurer, violate any law, rule, regulation or the constitution of the State of Colorado?
My conclusion is "no."
3. Is the state in default under any indenture, loan agreement, credit agreement, note or mortgage, or, will the execution, delivery and performance of the loan documents by the state treasurer result in a breach of or constitute a default under any indenture, loan agreement, credit agreement, note, mortgage or any other agreement to which it is a party or by which it or its properties may be bound or affected?
 I am not aware of any existing default nor of any potential breach or default as described above.
4. Do the loan documents constitute legal, valid and binding obligations of the State of Colorado enforceable against it in accordance with their respective terms and is the signature on the promissory note the duly authorized signature of the state official who signed and who has authority to bind the state?
My conclusion is "yes."
5. Are there any actions, suits or proceedings pending or, to the state's knowledge, threatened against or affecting the state or its properties before any court or governmental department, commission or board, which, if determined adversely to the state would have a material adverse effect on the ability of the state to perform its obligations under the loan documents?
 I am not aware of any such proceedings which would have a material adverse effect on the ability of the state to perform its obligations.
6. Has the state obtained all registrations or approvals of any governmental agency, department or commission necessary for the due execution, deliverance and performance by the state of the loan documents, and for the validity and enforceability thereof?
My conclusion is "yes."
ANALYSIS
The loan documents provide that the bank will serve as depository of the principal state bank accounts for a three year period. The feature of this agreement which differs from the past depository relationship is that the bank will loan the state money from one business day until the next in an amount sufficient to cover uncollected deposits to the state's accounts and advances made by the bank to pay state warrants, up to a maximum amount of $40 million. This loan permits the state treasurer more flexibility in managing state cash accounts.
The state treasurer agrees to pay the bank specified service charges for services covered in the agreement and interest on the one-day loan. As security for this loan, the state treasurer pledges federal securities with a market value of at least $30 million. The loan would be an obligation of the state only in the fiscal year in which it is made.
C.R.S. 1973, 24-36-104 authorizes and directs the state treasurer to deposit state moneys in depository banks. In a letter dated February 4, 1982, I considered whether a loan to the state treasurer such as that described in the loan documents would constitute debt as prohibited by section 3 of article XI of the Colorado Constitution. I concluded that such a loan would not constitute "debt" in that constitutional sense so long as the state is required to repay the loan only in the current fiscal year, and no future legislature becomes obligated to discharge the debt. A copy of that letter is enclosed with this opinion.
In that February 4, 1982 letter I further concluded that the state treasurer was not authorized by statute or the constitution to borrow moneys on behalf of the state nor to pay interest on those borrowings. Since that letter was written, the general assembly has passed Senate bill No. 85, which was approved by the Governor and became effective March 1, 1982. That act amends C.R.S. 1973, 24-36-104 to expressly authorize the treasurer to borrow moneys on a daily basis for the purpose of managing deposits of state moneys. It is my opinion that that act authorizes the treasurer to execute and perform his obligations under the loan documents. A copy of Senate bill No. 85 as finally enacted is enclosed with this letter.
It is also my opinion that the execution, delivery and performance by the state treasurer of the loan documents will not violate any law, rule, regulation or the Constitution of the State of Colorado. The obligation of the state is limited to the current fiscal year in which a loan is made and is not a "debt" of the state in the sense of the state constitution. Senate bill No. 85 sets out certain restrictions on loans made to the treasurer which are met by the loan documents. In section 18.01 of the agreement the bank agrees to provide eligible collateral as required and to otherwise comply with the Public Deposit Protection Act of 1975, article 10.5 of title 11, C.R.S. 1973.
It is my opinion also that the loan documents constitute legal, valid and binding obligations of the State of Colorado in accordance with their respective terms. The nature of the state's obligation is critically important because of the constitutional limitations placed on the state incurring debt, as discussed more fully in my letter of February 4, 1982. The loan and interest payment obligations set out in the loan documents are binding on the State of Colorado only in the fiscal year in which the loan is made and must be repaid on or before June 30 of each year of the contract. The obligation of the state to repay moneys borrowed pursuant to the agreement is not otherwise limited, however. It is payable from the general revenues of the state for that fiscal year and not just from specified funds.
Certain other representations and warranties are made by the state treasurer in section 3.01 of the agreement which are addressed in the conclusions above. Upon signature of the agreement by the state treasurer, attorney general and state controller all necessary governmental action has been taken to bind the state to the terms of the loan documents and those officers have authority to bind the state by their signatures.
As to the representations and warranties of the state treasurer concerning default in other agreements and pending litigation which would materially affect the state's obligations, I have no actual knowledge of any such matter. I am unable to give an opinion whether the state has good title to the federal securities pledged as collateral for the loan, however the state treasurer is authorized by statute to invest in such federal securities and that warranty is an appropriate one for him to make. See C.R.S. 1973, 24-36-113.
SUMMARY
It is therefore my opinion that the state treasurer is authorized to execute and perform the loan documents, that the loan documents constitute valid, binding obligations of the State of Colorado in the current fiscal year in which any advance is made, and that the treasurer's execution and performance of the loan documents in accordance with their respective terms will not violate any law of Colorado.
Very truly yours,
 J.D. MacFARLANE Attorney General
BANKS AND BANKING PUBLIC FUNDS TREASURER, STATE STATE DEBTS
C.R.S. 1973, 24-36-104
Colo. Const. art. XI, § 3
TREASURY, DEPT. OF All other Areas
The state treasurer is authorized to execute and perform a credit and operating agreement, promissory note and pledge agreement, all relating to the deposit of state moneys with a bank. The treasurer is further authorized to borrow money and pay interest under the terms of those agreements.